Steven M. White (#020061)
**WHITE BERBERIAN PLC**
60 E. Rio Salado Pkwy., Suite 900
Tempe, Arizona  85281
Tel:  (480) 626-2783
Fax:  (480) 718-8368
E-mail:  swhite@wbazlaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| NEW YORK STUDIO, INC., a Delaware corporation, | NO. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE BETTER BUSINESS BUREAU, INC., an Arizona non-profit corporation, | **(JURY TRIAL DEMANDED)** |
| and | **(SERVE BY PRIVATE PROCESS)** |
| THE BETTER BUSINESS BUREAU OF GREATER ST. LOUIS, INC., a Missouri non-profit corporation, | |
| Defendants. | |

**COMPLAINT**

Plaintiff, New York Studio, Inc. (hereinafter the "Plaintiff" or "NYS") requests judgment and damages from Defendants The Better Business Bureau, Inc. (the "Phoenix BBB") and The Better Business Bureau of Greater St. Louis, Inc. (the "St. Louis BBB") (collectively, the "Defendants").

**PARTIES**

1. NYS is a Delaware corporation with its principal place of business in Maryland. NYS trades under the business name "T*h*e," and is in the business of organizing modeling and acting events nationwide.

2. The Phoenix BBB is an Arizona non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc. (a Delaware corporation).

3. The St. Louis BBB is a Missouri non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc.

4. The Council of Better Business Bureaus, Inc.'s mission statement states that it is "the resource to turn to for objective, unbiased information on businesses."

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because all three parties are citizens of different states and the amount in controversy exceeds $75,000.00.

6. This Court has personal jurisdiction over the Phoenix BBB because the Phoenix BBB is an Arizona corporation with a principal place of business in this judicial district.

7. This Court has personal over the St. Louis BBB pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

8. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

A.  **ALLEGATIONS OF FACT**

9. On August 1, 2009, NYS purchased the "T*he*" trade name, trademarks, business goodwill, and other business assets related to the "T*he*" modeling and acting event organization business from NedGam Productions, LLC, a Nevada limited liability company.

10. The managing member of NedGam Productions is George Gammon, who is also the managing member of another Nevada limited liability company, DGS Productions, LLC, which trades under the names "ACT" and "Academy of Cinema and Television." Therefore, prior to August 1, 2009, the companies trading as "ACT" and "T*he*"—although distinct entities—had common ownership.

11. NYS is owned by Michael Palance, who is NYS's sole shareholder.

12. NYS does not have any ownership interest in NedGam Productions or DGS Productions, and it has never had any ownership interest in these companies.

13. Neither NedGam Productions nor DGS Productions has any ownership interest in NYS, and they have never had any ownership interest in NYS.

14. Michael Palance does not have any ownership interest in NedGam Productions or DGS Productions, and he has never had any ownership interest in these companies.

15. Since purchasing the "T*he*" brand and business assets in August 2009, NYS has invested significant resources in developing a nationwide reputation for providing aspiring young models and actors with a rare opportunity to perform live at a family friendly event which takes place at the Walt Disney World Swan and Dolphin Hotel.

16. Since purchasing the "T*he*" brand and business assets in August 2009, NYS has invested significant resources in improving T*he*'s reputation, which suffered from some negative publicity prior to the purchase related to a few consumer complaints and an early 2009 investigation by the Connecticut Attorney General regarding some contractual provisions in one of NedGam Productions' agreements.

The Phoenix BBB's "Business Reliability Report"

17. Between August 1, 2009 and late August or early September 2010, the Phoenix BBB published on its website a single "Business Reliability Report" for ACT, which falsely stated that "T*he*" is a fictitious business name of ACT.

18. During this time, if any consumer or business affiliate of "T*he*" searched for "T*he*" on any of the Better Business Bureau's national or regional websites, they were directed to the aforementioned "Business Reliability Report" published by the Phoenix BBB.

19. This "Business Reliability Report" falsely stated or falsely implied that there had been thirty-nine (39) consumer complaints filed against "T*he*" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints."

20. This is false and misleading because only a few of these complaints were actually filed against "T*he*"; the remainder were filed against the other entities falsely grouped as fictitious names on the "Business Reliability Report."

21. From at least as early as January 2010 through September 2010, NYS's employees and agents repeatedly and expressly notified the Phoenix BBB that "T*he*" was not

affiliated with and did not have common ownership with ACT, NedGam Productions, DGS Productions, or any of the other entities listed on the ACT "Business Reliability Report."

22. Despite this actual knowledge of the falsity of the "Business Reliability Report," the Phoenix BBB continued to publish the false report on its website through late August or early September 2010.

23. In addition, as recently as August 2010, the Phoenix BBB falsely stated to media outlets that ACT and "T*he*" are the same company.

## The St. Louis BBB's Republication

24. On information and belief, the St. Louis BBB has engaged in a pattern of republication of the Phoenix BBB's false statements, from August 2009 through the present.

25. Although there is not a separate "Business Reliability Report" issued for "T*he*" by the St. Louis BBB, it has made numerous false republications of the Phoenix BBB's false statements to both consumers and the media.

26. In August 2010, just before a scheduled "T*he*" event in Chesterfield, Missouri, the St. Louis BBB affirmatively issued press releases and reached out to local media repeating the Phoenix BBB's falsehoods about the number of complaints against "T*he*" and its purported affiliation with ACT.

27. In August 2010, when consumers called the St. Louis BBB to inquire about the upcoming "T*he*" event in Chesterfield, Missouri, representatives of the St. Louis BBB told the consumers, "Leave your wallet at home."

<u>The Effects of the False Statements</u>

28. Since August 2009, numerous "T*he*" customers who had already willingly entered into an agreement to attend a "T*he*" event have contacted "T*he*" seeking to cancel their contract and asking for a full refund based solely on hearing about the contents of the Phoenix BBB's "Business Reliability Report" or the St. Louis BBB's republication of those falsehoods, either directly or via local or national media outlets.

29. Since August 2009, attendance at "T*he*" events has decreased markedly.

30. Since August 2009, one of the Hollywood agents that regularly attends "T*he*" events has expressed concern about continuing his heretofore long and fruitful relationship with "T*he*" because of the negative publicity that is being generated by the Phoenix BBB and the St. Louis BBB. As a direct result of the negative publicity, this agent has asked NYS to refrain from using his name in connection with "T*he*" promotional materials.

31. Since August 2009, one of the venues that has regularly hosted "T*he*" events in the past has refused to host additional events, causing the cancellation of a planned "T*he*" event.

**COUNT I**
**DEFAMATION**

32. The allegations in paragraphs 1 through 31 are re-alleged and incorporated by reference as if fully set forth herein.

33. The statements made by the Phoenix BBB and St. Louis BBB after August 1, 2009 that (1) "T*he*" is the same company or is affiliated with ACT; (2) there been thirty-nine (39) consumer complaints filed against "T*he*" in the past thirty-six (36) months (as of August

6

2010), twenty (20) of which were "serious complaints"; and (3) "T*he*" is an acting and modeling agency (collectively, the "False Statements") are false, and the facts underlying those statements are false.

34. The False Statements are of, or concerning, NYS d/b/a "T*he*."

35. The False Statements have harmed and continue to harm the reputation of NYS, lower the company in the estimation of its consumers and business partners, and deter consumers and business partners from doing business with and associating with NYS.

36. The Defendants have published the False Statements to actual and potential consumers of NYS, as well as to local and national media outlets.

37. The Defendants made the False Statements with actual malice, existing at the time the False Statements were made, with a wanton and willful disregard of the rights of NYS, and with a reckless indifference to and a reckless disregard of the truth or falsity of those statements.

38. The False Statements constitute a substantial danger to NYS's reputation and prejudice NYS in its profession or trade, as they are allegations of unfitness to carry on a business or profession.

39. The False Statements are actionable *per se*, and as such, require no proof of actual injury to be actionable.

40. In addition, NYS has suffered actual injury in this case because the False Statements induced actual customers to seek cancellation of their contracts, potential customers

to avoid doing business with NYS, and business partners to refuse to continue in their business relationship with NYS.

41. NYS has invested time and resources to counter the False Statements and rehabilitate its professional reputation.

42. These actual damages from the False Statements total at least $14,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count I: (i) enter a judgment in favor of the Plaintiff and against GPP; (ii) award the Plaintiff FOURTEEN MILLION DOLLARS ($14,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff FIFTY-SIX MILLION DOLLARS ($56,000,000) in punitive damages; (iv) order the Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

**COUNT II**
**TORTIOUS INTERFERENCE WITH**
**CONTRACT AND/OR BUSINESS EXPECTANCY**

43. The allegations in paragraphs 1 through 42 are re-alleged and incorporated by reference as if fully set forth herein.

44. There was an existing business relationship between NYS and numerous customers who had already contracted to attend a "T*he*" event at the time the Defendants made the False Statements or at the time that the False Statements were republished by the media to these customers.

45. There was an existing business relationship between NYS and talent agent Christopher Ledford at the time the Defendants made the False Statements or at the time that the False Statements were republished by the media to Christopher Ledford.

46. There was an existing business relationship between NYS and the Overland Park Convention Center at the time the Defendants made the False Statements or at the time that the False Statements were republished by the media to the Overland Park Convention Center.

47. There was the probability of future economic benefit to NYS in its prospective business relationship with the hundreds or thousands of individuals and families who would have attended various "T*he*" events but for the False Statements, as evidenced by the decreased enrollment at such events since August 2009.

48. The Defendants knew or should have known about the aforementioned actual and prospective business relationships.

49. The existing customers who sought to cancel their contracts with "T*he*" because of the False Statements themselves have asserted that, were it not for the False Statements, they would have maintained their business relationship with NYS.

50. Christopher Ledford, who asked that "T*he*" cease using his name in its promotional materials, himself has asserted that, were it not for the False Statements, he would have continued to allow "T*he*" to advertise his affiliation with "T*he*."

51. The Overland Park Convention Center, which has recently refused to host "T*he*" events, itself has asserted that, were it not for the False Statements, it would have continued its business relationship with "T*he*."

9

52. The Defendants intentionally interfered with the aforementioned actual and potential business relationships by making the False Statements.

53. The False Statements were wanton and malicious defamation; improper under the laws of the State of Arizona.

54. As a result, NYS has been damaged in the amount of at least $14,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count II: (i) enter a judgment in favor of the Plaintiff and against GPP; (ii) award the Plaintiff FOURTEEN MILLION DOLLARS ($14,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff FIFTY-SIX MILLION DOLLARS ($56,000,000) in punitive damages; (iv) order the Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on issues so triable.

DATED this 28th day of September, 2010.

**WHITE BERBERIAN PLC**

By  /s/Steven White
    Steven M. White
    60 East Rio Salado Pkwy., Ste. 900
    Tempe, Arizona  85281
    *Attorney for Plaintiff*

1
2  **ORIGINAL** of the foregoing e-filed
   this 28th day of September, 2010:
3
4  Clerk of the Court
   Sandra Day O'Connor U. S. Courthouse
5  401 West Washington Street
   Phoenix, Arizona  85003-2118
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28