Steven M. White (#020061)
Paul D. Ticen (#024788)
**WHITE BERBERIAN PLC**
60 E. Rio Salado Pkwy., Suite 900
Tempe, Arizona  85281
Tel:  (480) 626-2783
Fax:  (480) 718-8368
E-mail:  swhite@wbazlaw.com
            pticen@wbazlaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| NEW YORK STUDIO, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>v.<br><br>THE BETTER BUSINESS BUREAU, INC., an Arizona non-profit corporation; THE BETTER BUSINESS BUREAU OF GREATER ST. LOUIS, INC., a Missouri non-profit corporation; BETTER BUSINESS BUREAU OF ALASKA, OREGON AND WESTERN WASHINGTON, a Washington non-profit corporation; and COUNCIL OF BETTER BUSINESS BUREAUS, INC., a Delaware non-profit corporation,<br><br>          Defendants. | NO.  CV-10-02078-PHX-SRB<br><br>**AMENDED COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)**<br><br>**(SERVICE BY PRIVATE PROCESS)** |

## **FIRST AMENDED COMPLAINT**

Plaintiff, New York Studio, Inc. (hereinafter the "Plaintiff" or "NYS") requests judgment and damages from Defendants The Better Business Bureau, Inc. (the "Phoenix BBB"), The Better Business Bureau of Greater St. Louis, Inc. (the "St. Louis BBB"), Better

Business Bureau of Alaska, Oregon and Western Washington (the "Alaska BBB"), and Council of Better Business Bureaus, Inc. (the "Council of BBBs") (collectively, the "Defendants").

## PARTIES

1. NYS is a Delaware corporation, which trades under the business name "T*he*" and is in the business of organizing modeling and acting events nationwide.

2. The Phoenix BBB is an Arizona non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc. (a Delaware corporation).

3. The St. Louis BBB is a Missouri non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc.

4. The Alaska BBB is a Washington non-profit corporation that is a local franchise of the Council of Better Business Bureaus, Inc.

5. The Council of BBBs is a Delaware non-profit corporation whose mission statement states that it is "the resource to turn to for objective, unbiased information on businesses."

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because all three parties are citizens of different states and the amount in controversy exceeds $75,000.00.

7. This Court has personal jurisdiction over the Phoenix BBB because the Phoenix BBB is an Arizona corporation with a principal place of business in this judicial district.

8.      This Court has personal jurisdiction over the St. Louis BBB pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

9.      This Court has personal jurisdiction over the Alaska BBB pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

10.     This Court has personal jurisdiction over the Council of BBBs pursuant to Rule 4.2(a) of the Arizona Rules of Civil Procedure and the due process clause of the United States Constitution based on its pattern of conduct in conspiring with the Phoenix BBB and other contacts with the forum.

11.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a).

**A.     ALLEGATIONS OF FACT**

12.     NYS is engaged in the business of organizing the acting and modeling events nationwide under the "T*he*" brand.  "T*he*" events are performance-based talent competitions that represent a wholesome, fun and family-oriented way to expose children to certain aspects of the entertainment business.  The children are provided with an opportunity to meet and perform for representatives from in the entertainment industry, and each participant gets their chance to shine, just as people auditioning for TV shows like "American Idol" or "America's Got Talent" are provided an opportunity to showcase their talents.

13. On August 1, 2009, NYS purchased the "T*h*e" trade name, trademarks, business goodwill, and other business assets related to the "T*h*e" modeling and acting event organization business from NedGam Productions, LLC, a Nevada limited liability company.

14. The managing member of NedGam Productions is George Gammon, who is also the managing member of another Nevada limited liability company, DGS Productions, LLC, which trades under the names "ACT" and "Academy of Cinema and Television." Therefore, prior to August 1, 2009, the companies trading as "ACT" and "T*h*e"—although distinct entities—had common ownership.

15. NYS is owned by Michael Palance, who is NYS's sole shareholder.

16. NYS does not have any ownership interest in NedGam Productions or DGS Productions, and it has never had any ownership interest in these companies.

17. Neither NedGam Productions nor DGS Productions has any ownership interest in NYS, and they have never had any ownership interest in NYS.

18. Michael Palance does not have any ownership interest in NedGam Productions or DGS Productions, and he has never had any ownership interest in these companies.

19. Since purchasing the "T*h*e" brand and business assets in August 2009, NYS has invested significant resources in developing a nationwide reputation for providing aspiring young models and actors with a rare opportunity to perform live at a family friendly events which takes place at the Walt Disney World Swan and Dolphin Hotel.

4

20. Neither NYS nor the "T*he*" business are currently or ever have been engaged in the business of offering or providing modeling agency or talent agency services or acting school services.

21. Since purchasing the "T*he*" brand and business assets in August 2009, NYS has invested significant resources in improving T*he*'s reputation, which suffered from some negative publicity prior to the purchase related to a few consumer complaints and an early 2009 investigation by the Connecticut Attorney General regarding some contractual provisions in one of NedGam Productions' agreements.

### The Phoenix BBB's "Business Reliability Report"

22. Between August 1, 2009 and late August or early September 2010, the Phoenix BBB published on its website a single "Business Reliability Report" for ACT, which falsely stated that "T*he*" is a fictitious business name of ACT and that "T*he*" is a drama instruction school.

23. During this time, if any consumer or business affiliate of "T*he*" searched for "T*he*" on any of the Better Business Bureau's national or regional websites, they were directed to the aforementioned "Business Reliability Report" published by the Phoenix BBB.

24. This "Business Reliability Report" falsely stated or falsely implied that there had been thirty-nine (39) consumer complaints filed against "T*he*" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints."

25. This is false and misleading because only a few of these complaints were actually filed against "T*he*"; the remainder were filed against the other entities falsely grouped as fictitious names on the "Business Reliability Report."

26. The "Business Reliability Report" is also false and misleading because "T*he*" is not a drama instruction school.

27. From at least as early as January 2010 through September 2010, NYS, through its agents, repeatedly and expressly notified the Phoenix BBB that "T*he*" was not affiliated with ACT, NedGam Productions, DGS Productions, or any of the other entities listed on the ACT "Business Reliability Report."

28. Despite this actual knowledge of the falsity of the "Business Reliability Report," the Phoenix BBB continued to publish the false report on its website through late August or early September 2010.

29. In addition, as recently as August 2010, the Phoenix BBB falsely stated to media outlets that ACT and "T*he*" are the same company.

The St. Louis BBB's Republication

30. On information and belief, the St. Louis BBB has engaged in a pattern of republication of the Phoenix BBB's false statements, from August 2009 through the present.

31. Although there is not a separate "Business Reliability Report" issued for "T*he*" by the St. Louis BBB, it has made numerous knowingly false republications of the Phoenix BBB's false statements to both consumers and the media.

32. In August 2010, just before a scheduled "T*h*e" event in Chesterfield, Missouri, the St. Louis BBB affirmatively issued press releases and reached out to local media repeating the Phoenix BBB's falsehoods about the number of complaints against "T*h*e" and its purported affiliation with ACT.

33. In August 2010, when consumers called the St. Louis BBB to inquire about the upcoming "T*h*e" event in Chesterfield, Missouri, representatives of the St. Louis BBB told the consumers, "Leave your wallet at home."

### The Alaska BBB's "Consumer Warning"

34. On October 8, 2010, one day before a scheduled "T*h*e" audition event at the Dena'ina Civic and Convention Center in Anchorage, Alaska, the BBB issued a press release concerning the event.

35. The October 8, 2010 press release falsely stated or implied that "T*h*e" is a "talent and modeling agency" and encouraged local consumers to exercise caution before doing business with "T*h*e" based on this false statement of fact.

36. On information and belief, the Alaska BBB's October 8, 2010 press release was disseminated and published to local media outlets and to the general public.

37. On information and belief, the Alaska BBB's October 8, 2010 press release was informed by the false statements of the Phoenix BBB, which were re-disseminated by the Council of BBBs.

### The Council of BBBs' Information Sharing Network

38. The Council of BBBs maintains an information sharing network that facilitates the dissemination and re-dissemination of information among regional Better Business Bureau franchises across North America.

39. The central hub of this information sharing network is the bbb.org second-level domain, which hosts numerous regional subdomains (i.e., [geographic designator].bbb.org) as well as email and, on information and belief, other communication dissemination mechanisms.

40. On information and belief, the Council of BBBs uses this information sharing network to republish and re-disseminate information created by and published by regional Better Business Bureau franchises.

41. On information and belief, the Council of BBBs employed its information sharing network to re-publish and re-disseminate false information regarding "T*he*" provided by the Phoenix BBB and the St. Louis BBB.

### The Effects of the False Statements

42. Since August 2009, numerous "T*he*" customers who had already willingly entered into an agreement to attend a "T*he*" event have contacted "T*he*" seeking to cancel their contract and asking for a full refund based solely on hearing about the contents of the Phoenix BBB's "Business Reliability Report," the St. Louis BBB's republication of those falsehoods, or the Alaska BBB's press release, either directly or via local or national media outlets.

43. Since August 2009, attendance at "T*he*" events has decreased markedly as a direct result of the Defendants' defamatory statements and re-publication of those statements.

44. Since August 2009, two of the Hollywood casting directors that regularly attended "T*he*" events have expressed concern about continuing their long and fruitful relationship with "T*he*" because of the negative publicity that is being generated by the Phoenix BBB and the St. Louis BBB. As a direct result of the negative publicity, these casting directors have asked NYS to refrain from using their names in connection with "T*he*" promotional materials.

45. Since August 2009, one of the venues that has regularly hosted "T*he*" events in the past has refused to host additional events, causing the cancellation of a planned "T*he*" event.

## COUNT I: DEFAMATION
**(NYS v. Phoenix BBB, St. Louis BBB, and Alaska BBB)**

46. The allegations in paragraphs 1 through 45 are re-alleged and incorporated by reference as if fully set forth herein.

47. The statements made by the Phoenix BBB, the St. Louis BBB, and the Alaska BBB (collectively, the "Regional BBB Defendants") after August 1, 2009 that (1) "T*he*" is the same company or is affiliated with ACT; (2) there been thirty-nine (39) consumer complaints filed against "T*he*" in the past thirty-six (36) months (as of August 2010), twenty (20) of which were "serious complaints"; and/or (3) "T*he*" is an acting and modeling agency (collectively, the "False Statements") are false, and the facts underlying those statements are false.

48. The False Statements are of, or concerning, NYS d/b/a "T*he*."

49. The False Statements have harmed and continue to harm the reputation of NYS, lower the company in the estimation of its consumers and business partners, and deter consumers and business partners from doing business with and associating with NYS.

50. The Regional BBB Defendants have published the False Statements to actual and potential consumers of NYS, as well as to local and national media outlets.

51. The Regional BBB Defendants made the False Statements with actual malice, existing at the time the False Statements were made, with a wanton and willful disregard of the rights of NYS, and with a reckless indifference to and a reckless disregard of the truth or falsity of those statements.

52. The False Statements constitute a substantial danger to NYS's reputation and prejudice NYS in its profession or trade, as they are allegations of unfitness to carry on a business or profession.

53. The False Statements are actionable *per se*, and as such, require no proof of actual injury to be actionable.

54. In addition, NYS has suffered actual injury in this case because the False Statements induced actual customers to seek cancellation of their contracts, potential customers to avoid doing business with NYS, and business partners to refuse to continue in their business relationship with NYS.

55. NYS has invested time and resources to counter the False Statements and rehabilitate its professional reputation.

56. These actual damages from the False Statements total at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count I: (i) enter a judgment in favor of the Plaintiff and against the Regional BBB Defendants, jointly and severally; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Regional BBB Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

**COUNT II: TORTIOUS INTERFERENCE WITH
CONTRACT AND/OR BUSINESS EXPECTANCY**
**(NYS v. Phoenix BBB, St. Louis BBB, and Alaska BBB)**

57. The allegations in paragraphs 1 through 56 are re-alleged and incorporated by reference as if fully set forth herein.

58. There was an existing business relationship between NYS and numerous customers who had already contracted to attend a "T*he*" event at the time the Regional BBB Defendants made the False Statements or at the time that the False Statements were republished by the media to these customers.

59. There was an existing business relationship between NYS and casting directors Paul Weber and Christian Kaplan at the time the Regional BBB Defendants made the False Statements or at the time that the False Statements were republished by the media to Paul Weber and Christian Kaplan.

60. There was an existing business relationship between NYS and the Overland Park Convention Center at the time the Regional BBB Defendants made the False Statements or at

11

the time that the False Statements were republished by the media to the Overland Park Convention Center.

61. There was the probability of future economic benefit to NYS in its prospective business relationship with the hundreds or thousands of individuals and families who would have attended various "T*h*e" events but for the False Statements, as evidenced by the decreased enrollment at such events since August 2009.

62. The Regional BBB Defendants knew or should have known about the aforementioned actual and prospective business relationships.

63. The existing customers who sought to cancel their contracts with "T*h*e" because of the False Statements themselves have asserted that, were it not for the False Statements, they would have maintained their business relationship with NYS.

64. Paul Weber and Christian Kaplan, who asked that "T*h*e" cease using their names in its promotional materials, themselves have both asserted that, were it not for the False Statements, they would have continued to allow "T*h*e" to advertise their affiliation with "T*h*e."

65. The Overland Park Convention Center, which has recently refused to host "T*h*e" events, itself has asserted that, were it not for the False Statements, it would have continued its business relationship with "T*h*e."

66. The Regional BBB Defendants intentionally interfered with the aforementioned actual and potential business relationships by making the False Statements.

67. The False Statements were wanton and malicious defamation; improper under the laws of the State of Arizona.

68. As a result, NYS has been damaged in the amount of at least $15,000,000.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count II: (i) enter a judgment in favor of the Plaintiff and against the Regional BBB Defendants, jointly and severally; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Regional BBB Defendants pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

**COUNT III: CONSPIRACY**
**(NYS v. Council of BBBs)**

69. The allegations in paragraphs 1 through 68 are re-alleged and incorporated by reference as if fully set forth herein.

70. On information and belief, the Council of BBBs employed its information sharing network to re-publish and re-disseminate the False Statements to other regional Better Business Bureau franchises, including the Alaska BBB.

71. On information and belief, this re-publication was done with the knowledge and intent that regional Better Business Bureau franchises would further re-publish and re-disseminate the False Statements to both the general public and media outlets nationwide.

72. The Council of BBBs therefore acted in concert with the Regional BBB Defendants in furtherance of their defamation and tortious interference.

WHEREFORE, the Plaintiff prays that this Court, with respect to Count III: (i) enter a judgment in favor of the Plaintiff and against the Council of BBBs, jointly and severally with

the Regional BBB Defendants; (ii) award the Plaintiff FIFTEEN MILLION DOLLARS ($15,000,000) in actual compensatory and consequential damages; (iii) award the Plaintiff SIXTY MILLION DOLLARS ($60,000,000) in punitive damages; (iv) order the Council of BBBs to pay the Plaintiff's costs and expenses of the suit; and (v) grant such further and general relief as the Court may find warranted.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on issues so triable.

DATED this 18th day of October, 2010.

**WHITE BERBERIAN PLC**

By  /s/Steven White
Steven M. White
60 East Rio Salado Pkwy., Ste. 900
Tempe, Arizona  85281
*Attorney for Plaintiff*

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on October 18, 2010, I electronically filed:

**AMENDED COMPLAINT**

with the U.S. District Court clerk's office using the ECF system, which will send notification of such filing to the assigned Judge.

/s/Steven White
Steven M. White
WHITE BERBERIAN PLC
60 East Rio Salado Pkwy., Ste. 900
Tempe, Arizona  85281
*Attorney for Plaintiff*
